UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**CEDEAL HARPER,**

      **Plaintiff,**

**v.**                              **Case No. 2:12-cv-04751**

**DAVID BALLARD, Warden,**
**MAJOR ROBERT RHODES, Chief**
**Correctional Officer, REGINA STEPHENSON,**
**and SHERRILE SNYDER,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

      This matter is proceeding on the plaintiff's Third Amended Complaint (ECF No. 27), which was filed on December 3, 2014.[1]  Also pending before the court are the plaintiff's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) and the plaintiff's Motion for Preliminary Injunction and/or Restraining Order (ECF No. 28).  This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] As service of process had not occurred prior to the filing of the Third Amended Complaint, the plaintiff's amendment of the Complaint is permissible without leave of court under Rule 15(a).  In light of this amendment, any claims that were raised in the plaintiff's prior Complaint documents that are not repeated in the Third Amended Complaint are considered to have been abandoned by the plaintiff in this civil action and will not be further addressed in this Proposed Findings and Recommendation ("PF&R").

## **STANDARD OF REVIEW**

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *  In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[2]

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's Third Amended Complaint names the following defendants: David Ballard, Warden of the Mount Olive Correctional Complex ("MOCC"), Major Robert Rhodes, Chief Correctional Officer at MOCC, Regina Stephenson, and Sherrile Snyder. (ECF No. 27, at 2-3, ¶¶ 4-7). According to the Third Amended Complaint, defendants Rhodes, Stephenson and Snyder were members of the Administrative Segregation Committee at MOCC. (*Id.*, ¶¶ 5-7). The Third Amended Complaint further states that each defendant is being sued in his or her individual capacity, and in his or her official capacity to the extent that the plaintiff is seeking non-monetary damages. (*Id.* at 3, ¶ 8).

The plaintiff's Third Amended Complaint alleges that, on or about January 24, 2013, the plaintiff was written up for a rules violation for "bucking the line" (cutting the line) and "insubordination," which he alleges to be "relatively minor prison incidents." (*Id.* at 4, ¶ 12). The plaintiff further contends that, on or about February 7, 2013, the plaintiff attended a disciplinary hearing on those write-ups, was found guilty of the violations, and was given 60 days of punitive segregation, which made him eligible for placement in administrative segregation at the conclusion of his punitive segregation term. (*Id.*, ¶ 13).

The Third Amended Complaint further alleges that, on or about March 28, 2013, the plaintiff attended an administrative segregation ("ad-seg") hearing to determine if

---

[2] Because service of process has not occurred, a motion to dismiss has not been filed in this case. Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

3

he was "a threat to security." (*Id.*, ¶ 14). The plaintiff further alleges that defendants Rhodes, Stephenson and Snyder, who sat on the ad-seg committee, were present for the hearing, along with Gary Hinte and a counselor, who are not named as defendants herein. (*Id.*, ¶¶ 15, 16). The Third Amended Complaint further alleges as follows:

17. After a testy exchange, mostly between the plaintiff and defendant Rhodes, the plaintiff was taken out of the proceeding so the review committee could make its decision.

18. However, after the review committee made their decision, the plaintiff refused to return for the disposition of the review.

19. Without the plaintiff, plaintiff's representative went into the hearing and came out and told the plaintiff the committee said if you don't come in that you "will" (with emphasis) get "the program."[3]

20. The plaintiff shrugged his shoulders and told counsel to tell them give me my level one if that's what they wanna do.

21. Thereafter, the plaintiff was escorted to his cell and heard nothing else.

22. Later on, during that day, the plaintiff received a memo in the mail from the Warden David Ballard upholding the committee's decision recommending that the plaintiff be placed on ad-seg for an indefinite amount of time.

23. The plaintiff was never given the reasons why or informed on how the plaintiff was a "threat to security" or why the status change from punitive segregation to ad-seg, but was simply notified of my status change.

24. On or about April 8, 2013, after the ad-seg hearing that resulted in the plaintiff being placed on administrative segregation, the plaintiff received an extremely late answer to the insubordination appeal (the Warden is supposed to respond to appeals in 30 days per policy). The Warden denied the plaintiff's appeal. Almost after submission, for reasons that plaintiff was not appealing for.

---

[3] The undersigned believes that "the program" to which the plaintiff is referring is the "Quality of Life" program, which is a behavior-driven progressive incentive system consisting of five levels, with the ultimate goal being to prepare the inmate to return to the general prison population. Inmates qualify for advancement to the next level by completing required behavioral and educational programs, and remaining write-up free.

4

25. The Warden reviewed defendants Rhodes, Snyder and Stephenson's decision to uphold it.

26. Eventually the plaintiff obtained a copy of the ad-seg initial hearing recommendation. The recommendation was made to change plaintiff's status from punitive segregation to ad-seg for the following reason: "IM attitude, demeanor, and refusal to attend disposition of hearing." (See Exhibit A attached).

(ECF No. 27 at 5-6, ¶¶ 17-26).

The plaintiff alleges that he has been in ad-seg for more than 575 days. (*Id.* at 6, ¶ 28). He further alleges that his placement in ad-seg by the defendants violates West Virginia Division of Corrections ("WVDOC") Policy Directive 326.01, and that such decision was arbitrary, excessive and disproportionate, because he is not a "security threat." He further claims that his placement in ad-seg serves no penological purpose or interest. (*Id.* at 6-7, ¶¶ 27-30). The plaintiff further contends that he was never given written notice of the evidence that allegedly warranted his placement in ad-seg. Therefore, he asserts that he could not prepare a proper defense in accordance with Policy Directive 326.01. (*Id.* at 7, ¶¶ 31-32).

The Third Amended Complaint further alleges that the plaintiff was not initially given the written reasons for his placement on ad-seg or "preventive confinement," despite requesting the same, and was not provided a copy thereof for almost a year. (*Id.*, ¶ 33). The plaintiff further alleges that he has not received periodic review of his status to determine whether his continued placement in ad-seg is appropriate and necessary. (*Id.*, ¶ 34). He further alleges that there is no set policy that informs the plaintiff of any affirmative actions he may take to expedite his release from ad-seg, which, he contends, allows for arbitrary determinations by staff, in violation of his due process rights. (*Id.*, ¶ 35).

The plaintiff further alleges that, since he was placed in ad-seg, he has been assaulted and had excessive force used against him, and has been retaliated against, by prison staff.[4] The plaintiff further alleges that his placement in ad-seg has resulted in severely reduced privileges, including limited contact with other inmates and persons outside the prison, limited access to the prison library, as well as rehabilitative and academic programs, and limited opportunities for physical exercise. (*Id.* at 8, ¶ 37).

The plaintiff's Third Amended Complaint alleges that the conduct of the defendants denied him due process of law, in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Sections 5 and 10 of the West Virginia Constitution, and constituted excessive punishment in violation of the Eighth Amendment. (*Id.* at 10, ¶ 45). The plaintiff also summarily alleges that "the failure to use reasonable care or breach of duty by defendant Ballard constitutes negligence" under West Virginia state law. (ECF No. 27 at 9-10, ¶¶ 42-43). The plaintiff further asserts that he has no plain, adequate or complete remedy at law to redress the wrongs of the defendants and, thus, he is entitled to declaratory and injunctive relief, as specified in the Third Amended Complaint and his separate Motion for Preliminary Injunction or Restraining Order. (ECF No. 27 at 10-11, ¶¶ 44. 47; ECF No. 28).

## ANALYSIS

### A.    Sufficiency of Third Amended Complaint.

*Due process claim*

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property,

---

[4] These allegations are the subject of other pending civil actions filed by the plaintiff (*see* Case Nos. 2:13-cv-19796, 2:13-cv-25077, and 2:14-cv-07529).

without due process of law."[5]  At issue here is whether the defendants denied the plaintiff any potential liberty interest.  However, as a result of his conviction and imprisonment, a prisoner's protected liberty interests are significantly reduced.  As noted by the Supreme Court in *Sandin v. Conner*, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner" and "the Due Process Clause did not itself create a liberty interest to be free from intrastate prison transfers."  515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)).  In the prison context, a liberty interest can be created by state policies or regulations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit found that Maryland inmates in administrative segregation who claimed to be surrounded by vermin, human filth and water from leaking toilets, denied air conditioning, served cold food in meager portions, denied outdoor recreation, and given no educational or religious services, had failed to meet the *Sandin* standard.  The *Beverati* court reiterated that, "[i]n order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action.  Under the reasoning in *Sandin*, the Fourth Circuit held that neither the fact that the inmates were placed in administrative segregation, nor the general conditions therein, resulted in confinement that is atypical or posed a significant hardship on the inmates vis a vis ordinary prison life, so as to give rise to a liberty interest protected by the Due Process Clause.  *Id.* at 502-504.  The court specifically stated:

---

[5] The plaintiff also cites to the Fifth Amendment, which contains a similar guarantee.

> Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment [to defendants], we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.
>
> In sum, we conclude that viewing the conditions of confinement in administrative segregation that are alleged by Inmates in the light most favorable to them, the conditions do not implicate a liberty interest. And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.

500 F.3d at 504.

In *Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005), the Supreme Court reaffirmed that the threshold question in determining if a prisoner has a state-created liberty interest in avoiding certain conditions of confinement is whether such an interest "arise[s] from state policies or regulations." Then the court must determine whether "the nature of [the] conditions themselves 'in relation to the ordinary incidents of prison life,'" impose "an atypical and significant hardship." *Id.* The *Wilkinson* Court found that the "totality of circumstances" to which inmates are subjected in the Ohio State Penitentiary ("OSP")[6] (prohibition of almost all human contact including cell-to-cell conversation, 24 hour a day lighting, one hour exercise in a small indoor room, indefinite placement, and disqualification for parole consideration) could be atypical and significant hardships which creates a liberty interest and its attendant due process requirements. However, the Court further found that the state's procedures for placement of inmates in the OSP were adequate to safeguard that liberty interest.

---

[6] The OSP is a "supermax" prison, which is a maximum security facility "with highly restrictive conditions designed to segregate the most dangerous prisoners from the general population." 545 U.S. at 212.

8

Most recently, the Fourth Circuit expanded on this issue in *Prieto v. Clarke*, 780 F.3d 245 (4th Cir. 2015). *Prieto* involved the automatic and permanent placement of Virginia's death row inmates in solitary confinement. The *Prieto* court engaged in a detailed discussion of the line of cases involving the due process implications of segregated confinement, particularly *Sandin* and *Wilkinson*, again emphasizing that an inmate must establish both "a basis for an interest or expectation in state regulations" and that the "denial of this state-created interest resulted in an 'atypical and significant hardship' to him." 780 F.3d at 250. The court further clarified the *Wilkinson* holding that "it was 'the inmates' interest in avoiding erroneous placement at the supermax under the state's classification regulations *combined with* these harsh and atypical conditions that triggered Due Process protections.'" *Id.*

*Prieto* also emphasized that deference must be given to the discretion of prison officials to set prison conditions and policies. The court stated:

> Concerned with eliminating "disincentives for States to 'codify' prison management procedures," the *Sandin* Court adopted an approach that would encourage States to codify their policies regarding treatment and confinement of inmates. 515 U.S. at 482, 115 S. Ct. 2293. This approach, reaffirmed in *Wilkinson*, provides inmates and prison administrators with clear notice of a prisoner's rights, but it also permits a given state to codify procedures establishing very restrictive confinement conditions. The judgment that this tradeoff strikes the correct balance between the dictates of the Due Process Clause and the pressures on state correctional systems is one that the Supreme Court has made and we cannot disturb.

780 F.3d at 255.

The plaintiff has attached to his Third Amended Complaint the WVDOC's Policy Directives 326.01 (Administrative Segregation) and 326.00 (Special Management/Punitive Segregation/Administrative Segregation). (ECF No. 27, Exs. B and C). Both of these policy directives set forth specific procedures for placement in and

9

periodic review of inmates placed in segregated confinement and the appeal of such decisions. Policy Directive 326.00 also specifically addresses requirements for certain conditions of confinement in segregation. (*Id.*, Ex. C). The plaintiff has also attached the March 28, 2013 decision of the ad-seg committee to place him in administrative segregation, which indicates that the committee recommended a change of the plaintiff's status from punitive segregation to administrative segregation based upon the "IM's attitude, demeanor and refusal to attend disposition of hearing." (*Id.*, Ex. A).

Upon review of the policy directives in conjunction with the plaintiff's allegations in his Third Amended Complaint, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not established that a liberty interest was implicated in the decisions of prison staff to place and retain him in administrative segregation. It is not atypical for inmates to be placed in administrative segregation for any number of reasons. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d at 502-04 ("confinement to administrative segregation does not implicate a liberty interest"). Furthermore, a prisoner has no liberty interest in being housed in any particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976).

Policy Directive 326.01 specifies that an inmate who is serving 60 days of punitive segregation will be reviewed by the ad-seg committee within 21 days of their release from punitive segregation. (ECF No. 27, Ex. B at Section V(D)(3)). The Policy Directive further delineates the available information or evidence that the committee may consider, including the disciplinary record of the inmate; information from staff or other inmates concerning the behavior of the inmate that may be considered a threat to safety or security at the prison (which may include confidential information);

10

psychological evidence; specific information showing that the inmate has been involved in disruptive behavior, including repeated insubordination; and information from the inmate's record indicating that he or she is not able to function in the general prison population. (*Id.* at Section V(F)). Although the Policy Directive states that the inmate shall be notified in person of the ad-seg committee's recommendation immediately upon the conclusion of the hearing, in the instant case, the plaintiff refused to participate in that portion of the hearing. The Policy Directive further states that the inmate and the Warden shall be notified in writing of the recommendation within 24 hours of the conclusion of the hearing, and then the Warden must review such recommendation and uphold or overturn it. In the instant case, it appears that the plaintiff is alleging that he did not receive the written decision of the ad-seg committee in a timely manner; however, he did receive the Warden's decision upholding his placement in ad-seg within 24 hours.

Furthermore, although the ad-seg committee must provide a reason or reasons for its recommendation, the Policy Directive does not appear to require that the committee list specific evidence upon which their recommendation is grounded. Thus, the plaintiff's allegations that he was not provided with written notice of the acts or series of acts which led to his placement in segregation and that he was not informed of the evidence against him that warranted such placement appear to be of no moment.

Even if the court could read these policy directives to create an interest or expectation of West Virginia state prisoners to avoid placement in segregated confinement, the undersigned proposes that the presiding District Judge **FIND** that the policy directives, in conjunction with the plaintiff's summarily pled allegations concerning the conditions of confinement in the segregation units at MOCC, do not

create an atypical and significant hardship in relation to ordinary prison life. Although the conditions of confinement complained of by the plaintiff, in some respects, mirror those addressed in *Wilkinson* and *Prieto*, both of those cases are distinguishable from the plaintiff's.

First, as noted previously herein, *Prieto* involved the automatic placement of death row inmates into solitary confinement. Here, the ad-seg committee has discretion to consider whether an inmate's behavior and record warrant such placement. Second, unlike in *Wilkinson*, there is nothing in the WVDOC policy directives that indicates that placement in ad-seg denies an inmate parole eligibility, and the policies provide for more frequent periodic review of a segregated inmate's status. Although the plaintiff alleges that he has been denied such review, his allegation is vague and summarily pled. The undersigned believes that the policy directives discussed herein and other policy directives addressing the process for progressing through the Quality of Life program ("the QOL program") discussed *supra* in footnote 2, delineate specific time periods for review and specific procedures for how an inmate's behavior is evaluated for progression towards release from segregation. Thus, the plaintiff's allegation that his segregated confinement is arbitrary and indefinite must also fail.

Accordingly, because the plaintiff has not established a valid liberty interest in avoiding segregated confinement, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Third Amended Complaint fails to state a facially plausible due process claim against the defendants. Thus, there is no need to further address the specific process that was provided to the plaintiff herein.

### *Eighth Amendment claim*

The plaintiff has also alleged that his placement in administrative segregation was excessive and disproportionate. Thus, to the extent that the plaintiff is attempting to raise a claim concerning cruel and unusual punishment under the Eighth Amendment of the United States Constitution, the undersigned will also address the standard for such claims.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.*, at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

In *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir.), *cert. denied sub nom. Mickle v. Moore*, 528 U.S. 874 (1999) (hereinafter "*Five Percenters*"), the Fourth Circuit found no Eighth Amendment violations by prison officials who housed "the Five Percenters," an inmate group deemed to be a security risk, in segregated confinement for 23 hours a day, without radio or television, with five hours of exercise per week, and without participation in prison work, school or study programs. Such confinement had continued for more than three years at the time the case was litigated. *Id.* at 471-72.

The conditions of confinement addressed in the plaintiff's Third Amended Complaint are largely comparable to those addressed in the *Five Percenters* case, which were not found to be punitive. (*See* ECF No. 27 at 8, ¶ 37). Similar to the plaintiffs in *Five Percenters*, the plaintiff's Third Amended Complaint fails to sufficiently plead or demonstrate a serious deprivation of a basic human need, or that he has suffered any serious or significant injury resulting from the challenged conditions. At most, the plaintiff attempts to bootstrap to the instant claim his Eighth Amendment claims made in other civil actions concerning uses of pepper spray by correctional officers against the plaintiff while he has been in segregated confinement. The presiding District Judge has already granted summary judgment against the plaintiff in one of those other cases (*see* Case No. 2:12-cv-00656) and two others remain pending. Moreover, the plaintiff has not alleged any specific conduct of the defendants named herein that would rise to the level of deliberate indifference or cruel and unusual punishment under the Eighth Amendment. Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged a violation of his Eighth Amendment rights based upon his placement and retention in administrative segregation at MOCC.

Based upon the foregoing, the plaintiff has failed to state a facially plausible claim under the Fifth, Eighth or Fourteenth Amendments. Accordingly, pursuant to the holdings in *Twombly* and *Iqbal*, *supra*, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Third Amended Complaint fails to state a claim upon which relief can be granted under those constitutional provisions or their West Virginia equivalents.

### *Negligence claim*

The plaintiff also asserts a state law negligence claim against defendant David Ballard. However, the plaintiff's allegations are pled in a vague and conclusory manner, stating that defendant Ballard's "failure to use reasonable care or breach of duty . . . constitutes negligence." The plaintiff does not identify any specific duty that he claims was owed to him by defendant Ballard or explain how defendant Ballard allegedly failed to use reasonable care or breached such a duty. Accordingly, pursuant to the directives of *Twombly* and *Iqbal, supra*, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Third Amended Complaint fails to state a claim of negligence upon which relief can be granted.

**B.**  **The plaintiff's Motion for Preliminary Injunctive Relief.**

On December 3, 2014, the plaintiff filed a Motion for Preliminary Injunction and/or Restraining Order (ECF No. 28). The motion asserts that the plaintiff has been subjected to "unnecessary, excessive, arbitrary, and disproportionate sentence of punishment and denial of due process and negligence by prison officials, while housed in the segregation units of MOCC." (*Id.* at 1). The motion further states that the plaintiff

> seeks a temporary restraining order, prospective relief and/or preliminary injunction to ensure that the plaintiff and other inmates will not be improperly or unconstitutionally have there [sic; their] status changed to ad-seg or preventative confinement [and] that such individual[s] will not be subject to prolonged preventive confinement without unnecessary denial of privilleges [sic; privileges] that the inmate population enjoys; that said individuals are given adequate due process; and to prevent harm and continued harm.

(*Id.* at 2). The plaintiff's motion makes similar assertions to those in his Third Amended Complaint, claiming that the decision to place him in ad-seg for an indefinite period of time was arbitrary, excessive and disproportionate punishment compared to his attitude, demeanor and failure to attend the disposition segment of his hearing when he is allegedly not a threat to security.

Rule 65(b) of the Federal Rules of Civil Procedure permits the issuance of a Temporary Restraining Order, without notice to the adverse party, only if "specific facts in an affidavit or a verified complaint clearly show that the immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The remainder of the rule addresses the procedure for a hearing on motions for a preliminary injunction and the scope of any such injunction. *Id.*

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*")[7], in light of the

---

[7] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case. *See* 575 F.3d at 345-347.

Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008). As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)(per curiam). * * *
>
> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. And all four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the irreparable harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed, and that the court must

17

pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts. *Id.*

The plaintiff's request for preliminary injunctive relief is speculative. As noted by the defendants, the plaintiff relies primarily on actions taken in the past and has only asserted theoretical future injury. A mere possibility of harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21. Moreover, the undersigned has recommended that the presiding District Judge dismiss the plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted. Thus, the plaintiff has not clearly shown that he is likely to succeed on the merits of his claims, or that he is likely to be irreparably harmed without preliminary injunctive relief. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated the need for either a Temporary Restraining Order or a Preliminary Injunction.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Third Amended Complaint (ECF No. 27) under 28 U.S.C. § 1915A, **DENY** his Motion for Preliminary Injunction and/or Restraining Order (ECF No. 28), **DENY AS MOOT** his Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) (and waiving the applicable filing fee), and dismiss this civil action from the docket of the court.

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

June 10, 2015

Dwane L. Tinsley
United States Magistrate Judge